**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHELBY COOPER and MARIA CHIARAVALLOTI, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>LUME DEODORANT, LLC,<br><br>Defendant. | Case No.: 1:26-cv-05309-CM<br><br>CLASS ACTION<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR CONSUMER FRAUD**<br><br>DEMAND FOR JURY TRIAL |

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiffs SHELBY COOPER and MARIA CHIARAVALLOTI, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, bring this action against LUME DEODORANT, LLC ("Lume"), and allege the following upon their own knowledge or, where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1. Lume manufactures and sells "Unscented" deodorants under two different brand names: Lume, marketed to women, and Mando, marketed to men (the "Products").

2. Given the prominent front-label "Unscented" representation on each Product, consumers believe the Products are in fact unscented, *i.e.* free of fragrance. Lume's marketing, however, is false and misleading because the Products actually contain fragrance and are therefore scented.

3. Exemplars of the Products' labeling are shown on the following page.


72Hr!
ODOR CONTROL
Aluminum Free
Lumē
Whole Body Deodorant
FOR PITS, PRIVATES & BEYOND
Invisible Cream
Unscented
2.2 OZ (62g) NET WT


72Hr!
ODOR CONTROL
Aluminum Free
Lumē
Whole Body Deodorant
FOR PITS, PRIVATES & BEYOND
Invisible Cream
Unscented
3.0 OZ (85g) NET WT


ALUMINUM FREE
72 HOUR
ODOR CONTROL
MANDO
Whole Body Deodorant
FOR PITS, PACKAGES + FEET
SMOOTH SOLID
Unscented
2.6 OZ (75g) NET WT


ALUMINUM FREE
72 HOUR
ODOR CONTROL
MANDO
Whole Body Deodorant
FOR PITS, PACKAGES + FEET
INVISIBLE CREAM
Unscented
3.0 OZ (85g) NET WT

4. Plaintiffs bring this action against Lume on behalf of themselves, similarly situated Class Members, and the general public to enjoin Lume from deceptively marketing the Products as "Unscented," and to recover compensation for injured Class Members.

## THE PARTIES

5. Plaintiff Shelby Cooper presently resides and intends to continue to reside in Riverside County, California. Accordingly, she is a citizen of the State of California.

6. Plaintiff Maria Chiaravalloti presently resides and intends to continue to reside in Nassau County, New York. Accordingly, she is a citizen of the state of New York.

7. Defendant Lume is a Delaware corporation with its principal place of business in New York, New York. Lume distributes and markets the Products nationwide, including in California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a state different from Defendant. In addition, more than two-thirds of the class members reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

9. Defendant is an "unincorporated association" under CAFA and is therefore "a citizen of the State where it has its principal place of business [New York] and the State under whose laws it is organized [Delaware]." *See* 28 U.S.C. § 1332(d)(10); *Claridge v. N. Am. Power & Gas, LLC*, 2015 WL 5155934, at *1-2 (S.D.N.Y. Sept. 2, 2015) ("[A]s an LLC, [defendant] is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to

section 1332(d)(10)”).

10. The Court has personal jurisdiction over Lume because Lume has its headquarters in New York and has purposely availed itself of the benefits and privileges of conducting business activities within New York.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant resides (*i.e.*, is subject to personal jurisdiction) in this district.

## FACTS

### I. Lume Falsely Markets Deodorants Containing Fragrance as “Unscented”

12. Consumer demand for unscented skincare and hygiene products has grown drastically in recent years, driven by heightened awareness of health and ingredient safety issues.

13. “According to an NIH study, the ingredients in fragrance can have adverse effects on health. Components and contaminants in fragrances can cause allergies, breast cancer, reproductive disorders, skin allergies, nervous system damage and migraine headaches. This emerging knowledge has fueled the desire for a more natural and gentle skincare routine, and the demand for unscented products.”[1]

14. Moreover, “[s]ensitive skin is on the rise: Studies suggest that over 50% of adults report skin sensitivity.”[2] Unscented products are particularly beneficial for the many consumers with skin sensitivities, allergies, respiratory disorders, or who are otherwise sensitive to perfumes.

[1] https://livnature.com/blogs/news/growing-popularity-of-unscented-products-here-s-why (citing Zahra Kazemi et al., *Evaluation of pollutants in perfumes, colognes and health effects on the consumer: a systematic review*, J. ENVIRON. HEALTH SCI. ENG., Vol. 20, No. 1, pp. 589-98 (Feb. 3, 2022)).

[2] https://terra-tory.com/blogs/terra-haus/think-fragrance-free-doesn-t-sell-the-market-says-otherwise.

Unscented products minimize these risks and provide a safer, more desirable option for many consumers.

15. Dermatologists identify fragrance as a common skin irritant that should be avoided by those with sensitive skin.[3] This is because "[m]any fragrances contain allergens that can trigger reactions. Opting for fragrance-free options helps minimize the risk of irritation and keeps your skin calm and healthy."[4]

16. Even those without fragrance sensitivities sometimes wish to avoid fragrance due to the sensitivities of those around them, including workplace policies that prohibit the use of scented products.

17. Other consumers may want unscented deodorant so that it does not interfere with the fragrance of their perfume or cologne of choice.

18. Many consumers are thus willing to pay more for products that are unscented, *i.e.* free of fragrance. Unsurprisingly, consumers believe products labeled "Unscented" will be in fact unscented, *i.e.* free of fragrance.

19. As a sophisticated marketing company that studies consumer demand, Lume is aware of this strong consumer preference and capitalizes on it by marketing and labeling the Products as "Unscented."

20. Lume's claims that the Products are "Unscented" are false and misleading, however, because the Products contain "Floral Pyranol."

---

[3] *See*, *e.g.*, Andrea McLin, MPAS, PA-C, *Sensitive Skin? Avoid These 8 Common Irritants in Products You Use Daily*, Epiphany Dermatology, *available at* https://www.epiphanydermatology.com/medical-dermatology/sensitive-skin; Dr. Levy, *Navigating Sensitive Skin Fragrance Free Products That Actually Deliver*, Dermatology of Seattle & Bellevue (Sep. 23, 2025), *available at* https://dermatologyseattle.com/navigating-sensitive-skin-fragrance-free-products-that-actually-deliver.

[4] *Id.*

21. "Floral Pyranol" is "a synthetic aroma chemical" known "for its unique scent profile" and "distinctive contribution to floral fragrances[.]"[5]

22. By falsely labeling the Products "Unscented" when they are formulated with added fragrance ingredients, Lume chose to increase its profits at the expense of consumer trust.

23. Because the Products are prominently labeled as "Unscented," reasonable consumers usually do not—particularly prior to purchase—read the fine-print ingredients that include "floral pyranol" in the midst of a long list of unfamiliar compounds like "Isoamyl Laurate," "Dimethicone," "Cetearyl Glucoside," "PentyleneGlycol," "Phenylpropanol," "Dipropylene Glycol," and "Tetrasodium Glutamate Diacetate," among others.[6]




---

[5] https://www.nbinno.com/article/fragrance-ingredients/role-floral-pyranol-modern-fragrance-creation-jq.

[6] The "Ingredients" listed on the Mando Unscented Deodorants are identical to those shown for Lume.




24. Moreover, average consumers do not know what "floral pyranol" is, such that reading the ingredient list is insufficient to inform them that the Products contain fragrance and are therefore scented.

25. Moreover, the ingredients list does not preclude consumer deception. As the Second Circuit has noted, "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (insertion in original).

26. One "clean beauty expert,"[7] however, has noted "the potentially harmful ingredients of hidden synthetic fragrance in their unscented deodorant," stating "[t]he one that bugs me the most is they have hidden synthetic masking fragrance, because I'm sure a lot of people pick their unscented deodorant thinking they're avoiding fragrance. I find it impossible to trust a company who would do this."[8]

**II. Plaintiffs' Purchases, Reliance, and Injury**

27. Plaintiff Shelby Cooper purchased the stick variety of Lume Unscented Deodorant during the Class Period, with her last purchase in approximately January 2026 from Walmart in Riverside, California.

28. When purchasing the Product, Ms. Cooper was searching for a deodorant that was free of fragrance. In purchasing the Product, Ms. Cooper was exposed to, read, and relied on the label, including that the Product is "Unscented," which Ms. Cooper reasonably understood to mean free of fragrance. Ms. Cooper did not read the back label and so did not notice "floral pyranol" in the fine-print ingredient list.

29. Plaintiff Maria Chiaravalloti purchased the stick variety of Lume Unscented Deodorant during the Class Period, with her last purchase in Spring of 2026. Ms. Chiaravalloti most recently purchased her stick of Lume Unscented Whole Body Deodorant from a Target retail store in Farmingdale, New York.

30. When purchasing the Product, Ms. Chiaravalloti was searching for a deodorant that was free of fragrance. In purchasing the Product, Ms. Chiaravalloti was exposed to, read, and relied on the label, including that the Product is "Unscented," which Ms. Chiaravalloti reasonably

---

[7] https://organicbeautylover.com/about.

[8] https://organicbeautylover.com/skin/lume-deodorant-review.

understood to mean free of fragrance. Ms. Chiaravalloti did not read the back label and so did not notice "floral pyranol" in the fine-print ingredient list.

31. Plaintiffs acted reasonably in relying on Lume's "Unscented" representations, which Lume intentionally placed on the Products' labeling with the intent to induce average consumers into purchasing the Products.

32. Because the Products contain fragrance in the form of "floral pyranol," they are not unscented or fragrance-free. Instead of receiving products that were unscented and free of fragrance, Plaintiffs received Products that contained added fragrance ingredients.

33. The Products cost more than similar products without misleading labeling and would have cost less absent Lume's false and misleading statements.

34. Through the misleading labeling claims, Lume was able to gain a greater share of deodorant market than it would have otherwise and to increase the size of the market.

35. Plaintiffs paid more for the Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein.

36. For these reasons, the Products were worth less than what Plaintiffs and other Class Members paid for them.

37. Plaintiffs and other Class Members lost money as a result of Lume's deceptive claims and practices in that they did not receive what they paid for when purchasing the Products.

38. The California Plaintiff Ms. Cooper still wishes to purchase unscented products. She continues to see the Products at stores where she shops. Plaintiff would purchase the Products in the future if they were truly "Unscented," but as a lay consumer, Plaintiff may be unable to determine that in the future absent an injunction.

39. Plaintiffs' substantive right to a marketplace free of fraud, where they are entitled to rely with confidence on representations made by Lume, continues to be violated every time they are exposed to the Products' misleading labeling claims.

40. All of the Products are substantially similar in that they are all deodorants falsely marketed as unscented when they contain fragrance in the form of floral pyranol. Additionally, the Mando Products have the same formulation as their Lume counterparts.

## III. No Adequate Remedy at Law

41. The California Plaintiff and members of the California Subclass are entitled to equitable relief as no adequate remedy at law exists.

42. **Broader Statues of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. Thus, without application of tolling, California Subclass Members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, California Subclass Members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty or fraud will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

43. **More Prompt, Certain, and Efficient.** Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

44. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under

the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with Defendant's "Unscented" marketing, including the Products' label and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with Defendant's "Unscented" marketing. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and the California Subclass may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct; common law fraud claims require a showing of actual deception or reliance).

45. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and the California Subclass because Defendant continues to misrepresent the Products with the "Unscented" marketing. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm - none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of removing Defendant's "Unscented" marketing is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. An injunction requiring removal of the claim will prevent the ongoing deception and repeat purchases based thereon. It is also not available

through a legal remedy (such as monetary damages). In addition, injunctive relief is necessary because, because discovery and Plaintiff's investigation have not yet completed. Moreover, example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

46. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

47. **Procedural Posture - Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

48. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a Class of all persons in the United States who, at any time from June

24, 2022, to the time a class is notified (the "Class Period"), purchased any of the Products for personal or household use and not for resale or distribution; and the following subclasses:

California Subclass: all persons in California who, at any time during the Class Period, purchased any of the Products for personal or household use and not for resale or distribution; and

New York Subclass: all persons in New York who, at any time from June 24, 2023 to the time a class is notified (the "New York Subclass Period"), purchased any of the Products for personal or household use and not for resale or distribution.

49. The Members in the proposed Class and Subclasses are so numerous that individual joinder of all Members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

50. Questions of law and fact common to Plaintiffs and the Class (or Subclasses) include:

a. whether Lume's "Unscented" labeling and advertising was material, or likely to be material, to a reasonable consumer, or whether Lume had reason to believe that it was;

b. whether the Products contain fragrance ingredients;

c. whether, due to the Products' fragrance content, the challenged labeling is false, misleading, or reasonably likely to deceive a reasonable consumer;

d. whether Lume's conduct is unfair or violates public policy;

e. whether Lume's conduct violates California or federal cosmetics statutes or regulations;

f. the proper amount of damages, including punitive damages;

g. the proper amount of restitution; and

h. the proper scope of injunctive relief.

51. These common questions of law and fact predominate over questions that affect only individual Class (or Subclass) Members.

52. Plaintiffs' claims are typical of other Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Lume's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented.

53. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of consumer goods.

54. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

55. Lume has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

56. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of the California Subclass)**

57. Plaintiff Cooper realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

58. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

59. The acts, misrepresentations and practices alleged herein constitute business acts and practices.

### Fraudulent

60. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

61. As set forth herein, Lume's labeling and marketing of the Products as "Unscented" is likely to deceive reasonable consumers and the public.

### Unlawful

62. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a. The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL");

b. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA");

c. The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FFDCA"), which states that "A cosmetic shall be deemed to be

misbranded . . . [i]f its labeling is false or misleading in any particular," *id.* § 362; and

d. The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.* (the "Sherman Law"), which states "Any cosmetic is misbranded if its labeling is false or misleading in any particular," *id.* § 111730.

**Unfair**

63. Lume's conduct with respect to the labeling, advertising, and sale of the Products was unfair because Lume's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

64. Lume's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the FAL, CLRA, FFDCA, and Sherman Law.

65. Lume's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Lume through the misleading labeling does not outweigh the harm to Plaintiff and other California Subclass Members who were deceived into purchasing the Products believing they were unscented and therefore free of fragrance, when in fact they contain fragrance ingredients and are thus scented.

66. Lume's conduct is particularly unfair in light of the skin sensitivities that often lead people to seek out unscented products who are then unknowingly exposed to an increased risk of skin and respiratory irritation.

67. Lume profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

68. Plaintiff and other California Subclass Members are likely to continue to be damaged by Lume's deceptive trade practices, because Lume continues to disseminate misleading information and the Products continue to command a price premium in the marketplace as a result of Lume's deceptive practices. Thus, injunctive relief enjoining Lume's deceptive practices is proper.

69. Lume's conduct caused and continues to cause substantial injury to Plaintiff and other California Subclass Members. Plaintiff has suffered injury in fact as a result of Lume's unlawful conduct.

70. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Lume from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

71. Plaintiff also seeks an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

72. Because Plaintiff's claims under the UCL sweep more broadly than their claims under the CLRA, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff and other California Subclass Members for all of Lume's challenged behavior.

**SECOND CAUSE OF ACTION**
**Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(On Behalf of the California Subclass)**

73. Plaintiff Cooper realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

74. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75. As alleged herein, the advertisements, labeling, policies, acts, and practices of Lume relating to the Products were likely to mislead consumers acting reasonably.

76. Plaintiff suffered injury in fact as a result of Lume's actions as set forth herein because she purchased the Products in reliance on Lume's false and misleading marketing claims stating or suggesting that the Products are unscented and fragrance free.

77. Lume's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Lume has advertised the Products in a manner that is untrue and misleading, which Lume knew or reasonably should have known.

78. Lume profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

79. As a result, Plaintiff, the California Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Lume was unjustly enriched.

80. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Subclass, seek an order enjoining Lume from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law.

81. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and California Subclass Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

**THIRD CAUSE OF ACTION**
**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.***
**(On Behalf of the California Subclass)**

82. Plaintiff Cooper realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

83. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

84. Lume's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

85. Lume profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

86. Lume's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

87. Pursuant to California Civil Code § 1782, more than 30 days before filing this lawsuit, Plaintiff sent written notice of her claims and Lume's particular violations of the Act to Lume by certified mail, return receipt requested, but Lume has failed to implement remedial measures.

88. Plaintiff and other California Subclass Members have suffered harm and presently seek all relief available under this cause of action.

**FOURTH CAUSE OF ACTION**
**Unfair and Deceptive Business Practices, N.Y. Gen. Bus. L. § 349**
**(On Behalf of the New York Subclass)**

89. Plaintiff Maria Chiaravalloti realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

90. During the New York Class Period, Lume carried out a plan, scheme and course of conduct which was consumer oriented.

91. Lume's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

92. As alleged herein, Lume engaged in, and continues to engage in, deceptive acts and practices by advertising, marketing, distributing, and selling the Products with false or misleading claims and representations.

93. The New York Education Law states that "A drug . . . shall be deemed to be misbranded . . . [i]f its labeling is false or misleading in any particular," N.Y. Educ. Law § 6815; by misbranding the Products, Lume engaged in, and continues to engage in, unfair and deceptive acts and practices.

94. Lume's conduct was materially misleading to Ms. Chiaravalloti and the New York Subclass.

95. As a direct and proximate result of Lume's violation of N.Y. Gen. Bus. L. § 349, Ms. Chiaravalloti and the New York Subclass were injured and suffered damages.

96. The injuries to Ms. Chiaravalloti and the New York Subclass were foreseeable to Lume and, thus Lume's actions were unconscionable and unreasonable.

97. Lume is liable for damages sustained by Ms. Chiaravalloti and the New York Subclass to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or $50 per unit, whichever is greater.

98. Pursuant to N.Y. Gen. Bus. L. § 349(h), Ms. Chiaravalloti and the New York Subclass seek an Order enjoining Lume from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

**FIFTH CAUSE OF ACTION**
**False Advertising, N.Y. Gen. Bus. L. § 350**
**(On Behalf of the New York Subclass)**

99. Plaintiff Maria Chiaravalloti realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

100. Lume has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

101. As a result of Lume's false advertising, Ms. Chiaravalloti and New York Subclass Members have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Lume is permanently enjoined by this Court.

102. Ms. Chiaravalloti and the New York Subclass seek to enjoin the unlawful acts and practices described herein, and, pursuant to N.Y. Gen. Bus. L. § 350, recover their actual damages or $500 per unit, whichever is greater, along with reasonable attorney fees.

**SIXTH CAUSE OF ACTION**
**Fraud**
**(On Behalf of the Class)**

103. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

104. In representing that the Products are "Unscented," Lume provided Plaintiffs and other Class Members with false and misleading material information about the Products.

105. These misrepresentations were made with knowledge of their falsehood.

106. Lume intended to induce and actually induced Plaintiffs and other Class Members to purchase the Products.

107. Plaintiffs and other Class Members acted reasonably and justifiably in relying on Lume's representations that the Products are "Unscented."

108. The fraudulent actions of Lume caused damage to Plaintiffs and other Class Members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

109. Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Lume as to each and every cause of action, and the following remedies:

a. An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b. An Order requiring Lume to bear the cost of Class Notice;

c. An Order requiring Lume to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d. An Order requiring Lume to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

e. An Order requiring Lume to pay compensatory, statutory, and punitive damages as permitted by law;

f. An award of attorneys' fees and costs; and

g. Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

110. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: September 1, 2026

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (*Pro Hac Vice*)
*mmonroe@fmfpc.com*
TREVOR FLYNN (*Pro Hac Vice*)
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741

**SMITH KRIVOSHEY, PC**
Brittany S. Scott (*Pro Hac Vice*)
28 Geary Street, Suite 650 #1507
San Francisco, CA 94108
Telephone: (415) 839-7077
E-Mail: brittany@skclassactions.com

***Counsel for Plaintiffs***