USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHELBY COOPER and MARIA CHIARAVALLOTI, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>LUME DEODORANT, LLC,<br><br>Defendant. | Case No.: 1:26-cv-05309-CM<br><br>**JOINT STIPULATION AND A ~~PROPOSED~~ ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commitment to cooperate in good faith throughout the matter consistent with this Court's Rules Governing Electronic Discovery. The parties agree to cooperate in good faith regarding the disclosure and formulation of appropriate search methodologies, custodians, sources of ESI, in advance of any search and/or collection of ESI, approaches to phased discovery, and methods of disclosure.

Any party may seek to modify the provisions of this protocol for good cause after a substantive meet and confer. Nothing in this protocol alters a party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure, Local Rules of the United States District Court for the Southern District of New York, or the Individual Practices and Procedures of this Court.

**3. DEFINITIONS**

A. **"ESI,"** as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

B. **"Documents"** has the meaning contemplated in the Federal Rules of Civil Procedure.

C. **"Media"** means an object or device, real or virtualized, including but not limited to a disk, tape, computer or other device, on which data is or was stored.

D. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

E. **"Native data format"** means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities.

F. **"Parties"** means Plaintiffs and Defendant, collectively.

G. **"Image"** refers to a representation of certain types of ESI produced by converting a native file into standard image format capable of being viewed and printed on standard computer systems.

**4. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that certain data sources are not reasonably accessible.

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 3 of 18

The parties agree that preservation of potentially relevant ESI is reasonable and proportionate. To reduce the cost and burden of preservation, the parties agree that certain data sources are not reasonably accessible.

**A. Accessible ESI.**

The parties agree that reasonably accessible sources of ESI may include active and archived e-mail accounts, workstation or laptop hard drives, and cloud-based locations. Each party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant, unique ESI responsive to the opposing party's discovery requests will be found. Accessible ESI does not include ESI outside the custody and/or control of the Producing Party.

**B. Not Reasonably Accessible ESI.**

The parties agree that the needs of this case do not warrant the preservation, review or production of ESI that is not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and that if, and only to the extent that, the party in possession of that ESI believes in good faith that ESI is unlikely to contain significant relevant information not otherwise available in reasonably accessible sources. For purposes of this paragraph, the parties agree that the following sources of ESI are not reasonably accessible:

1. Backup tapes and systems created for the sole purpose of disaster recovery;
2. Voicemail, except for voicemail that is converted to text and forwarded to the recipient's email account;
3. Legacy data remaining from systems no longer in use that is unintelligible on the systems in use;
4. Residual, deleted, fragmented, overwritten, slack, damaged, or temporary data (e.g., data stored in a computer's RAM) only accessible by forensics;
5. Online access data such as temporary internet files, history, cache, cookies, and the like;

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 4 of 18

6. Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts;

7. Corrupted data or otherwise inaccessible files that cannot be recovered by the systems currently in use;

8. Automatically saved versions of documents and/or data in metadata fields that are frequently updated automatically, such as last-opened dates;

9. Server, system, or network logs;

10. System and program files defined on the NIST list;

11. Data with orphaned or missing links;

12. Broken or retired computers or hard drives;

13. Obsolete or retired hardware or software; and

14. Data stored on photocopiers, scanners, and fax machines.

Where a responding party contends it has or may have any additional sources of potentially responsive ESI that is not reasonably accessible because of undue burden or cost, and therefore need not be provided pursuant to Fed. R. Civ. P. 26(b)(2)(B), the parties shall promptly confer in order to (1) reach an agreement as to how they will proceed with respect to such allegedly inaccessible ESI, or, if the parties cannot reach an agreement after conferring, (2) notify the Court that the parties have a dispute regarding ESI alleged to be inaccessible. Where an assertion or objection of burden and cost is made, the parties agree to meet and confer to discuss the possibility of cost sharing prior to submitting the matter for resolution by the Court.

## 5. SEARCH

### A. Search Methodology

The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols to narrow the pool of collected documents to a set to undergo review for possible production. The parties have met and

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 5 of 18

conferred and hereby adopt the following search methodology to limit the volume of documents to be produced:

1. Within 14 days of entry of this Order, the Producing Party shall make an initial proposal of search terms for requests for production served prior to entry of the Order.
2. Subsequently, within 14 days following service of requests for production, the Producing Party shall make the initial proposal of search terms. Within 7 days after receiving the proposed search terms, the Requesting Party shall provide any proposed additional search terms, or proposed edits, to the Producing Party. The parties shall work together in good faith to agree on a final set of search terms to be applied to the data within 30 days from the Producing Party's initial proposal. The Producing Party shall provide hit counts broken down by search string within two business days of completing the agreed upon searches. If the Producing Party contends that a search string is unduly burdensome examples of asserted irrelevant hits shall be provided and the Producing Party shall provide proposed alternatives along with corresponding hit counts, to facilitate the meet and confer process.
3. After the parties agree on search terms, the Producing Party shall promptly review and produce non-privileged documents on a rolling basis.

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Further, without regard to the aforementioned provisions regarding search terms, if words, phrases, abbreviations, terms of art, idiomatic expressions, alternate spellings (or misspellings), or particular linguistic styles which are recurrent or that are unique to the Producing Party, or which are otherwise not presently known to the Requesting Party are

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 6 of 18

identified, then the Requesting Party may propose a search of the Producing Party's electronically stored information using additional search terms incorporating such information.

The Parties may use advanced search, analytical, and retrieval technologies like predictive coding, generative AI, or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to between the Parties.

Nothing in this protocol, or the subsequent designation of any search terms, shall operate to modify a party's production obligations under the applicable law, or limit the ability to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation.

Nothing in this protocol shall limit a party's ability to request the use of additional search terms during the litigation.

**B. De-Duplication.**

The parties agree that de-duplication of documents may be performed globally across the entire ESI collection (based on MD5 or SHA-1 hash values at the parent level). A list of all custodians who were in possession of the document, including those whose copy of the document was removed during deduplication, should be placed in the All Custodians field, with each entry separated by a semi-colon (;) character, as set forth in Attachment A. For emails with attachments, the hash value is generated based on the parent/child document grouping. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

**C. File Type Filter.**

The Parties agree that common system and program files as defined by the NIST library need not be processed, reviewed, or produced. In addition, the parties agree that the following file

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 7 of 18

types need not be processed, reviewed, or produced: .exe, .dll, .p7s, .ttf, .ad, .lnk, .mso, .joboptions, .ds_store.

**1. Parent-child document relationships.**

The parent-child relationship between attachments, enclosures, embedded files, hyperlinked files, and/or exhibits to any parent document shall be preserved to the extent possible. Child-documents should be consecutively produced immediately after the parent-document and the document family should be produced family-complete.

**2. Embedded / Hyperlinked Objects.**

Embedded or hyperlinked objects or files (e.g., Excel spreadsheets, Word documents, audio and video files, etc.), shall be extracted, searched and produced consistent with other ESI. Non-substantive embedded objects (e.g., MS Office embedded images, email in-line images, logos, etc.), need not be extracted. All extracted embedded files produced shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

**3. Instant Messaging / Chat**

To the extent that instant messaging, chat, or collaboration platform data (e.g., Slack, Microsoft Teams, Google Chat) is responsive, the parties agree to produce such communications in a reasonably usable format.

**4. Mobile/Text Messages**

To the extent that SMS, MMS, or iMessage communications are responsive and reasonably accessible, the parties agree to produce such communications in a reasonably usable format. To the extent possible, the producing party shall preserve and produce the metadata fields specified in Attachment A, including phone number from/to, device identifier, and read

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 8 of 18

receipts, to the extent such fields are available. The parties will meet and confer regarding the appropriate collection and processing methodology for any mobile devices identified during discovery.

**5. Collaborative Documents**

For collaborative documents stored in cloud-based platforms (e.g., Google Docs, Microsoft SharePoint, Box), the producing party shall produce the version of the document as it existed at the time of collection, in a reasonably usable format (e.g., PDF or native export). Where a document has a meaningful version history that is relevant to the litigation, the parties agree to meet and confer regarding production of prior versions upon a showing of relevance and proportionality. The producing party shall identify the collection date for any such document in the applicable metadata field.

**D. Password Protected Files.**

The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

**6. PRODUCTION**

**A. Phasing of Production.**

When a party serves a discovery request under Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and produce responsive documents on a rolling basis. The parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

**B. Supplemental Production.**

Each party reserves the right to supplement production as needed.

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 9 of 18

**C. Form of Production.**

Except as provided herein. ESI will be produced in black and white single page 300 DPI, Group IV TIFF image format or single-page .JPG (for color images). If particular documents warrant a different format. the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties also will accommodate reasonable requests for production of images in color (single-page JPEG file format).

**1. Metadata.**

The parties agree to produce the metadata fields listed in Attachment A.

The parties agree that any documents that are being reproduced from a separate action may be produced in the same format used in the other action. If a party requests that a particular category of documents produced from the separate action be reproduced with additional metadata or in a different format. the parties will meet and confer in good faith in an attempt to reach an agreement as to that request.

**2. Production Method.**

The parties agree to produce documents in the following production formats:

a. Electronically Stored Information (ESI) will be produced as follows:

- Images – all documents (except those designated to be produced in native below) will be produced as single-page, Group IV, 300 DPI TIFF (1 bit, black & white) images or single-page .JPG (for color images); along with an .OPT image cross-reference file.

- Natives – non-privileged (or redacted native) Audio/Video files, spreadsheets, CAD drawings, MS-PowerPoints, and any non-privileged file containing responsive information that cannot be rendered to TIFF will be produced in native. Native files will be named after their bates number and a bates-stamped single placeholder TIFF saying "Document Produced in Native Format" that also indicates the confidentiality treatment of the record will be produced for each native record.

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 10 of 18

- The parties may use an industry standard native redaction tool for native redactions.

- Text - Document-level extracted text files or OCR text files for redacted records or hard copy records will be provided. OCR text files shall be generated using commercially reasonable OCR software and shall be of sufficient quality to allow for text searching.

- Data - a standard delimited .DAT file containing paths for the native files and document-level text files, and the fields listed in Attachment A.

b. Hard-copy documents will be produced as follows:

- Hard copy documents should be scanned in a manner so as to retain their original organization and also produced as in TIFF as noted above. The database load file should contain the following fields to the extent captured at the time of collection:
    - Production Bates Begin
    - Production Bates End
    - Production Bates Begin Attachment
    - Production Bates End Attachment
    - Production Image Count
    - Custodian
    - Confidentiality
    - Redacted

The parties will make reasonable best efforts to ensure that hard copy documents are logically unitized when scanned. To the extent a significant volume of paper documents need to be scanned, the parties will confer regarding costs associated with logical utilization of such documents.

If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree that ESI produced as described herein is reasonably usable and is an acceptable alternative to organizing the images according to the categories in the document requests.

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 11 of 18

**3. Structured Data.**

Discoverable Information that is stored in a database (*e.g.*, structured data) will be produced in reasonably usable standard report export formats available in the ordinary course of business. Upon review of the exported report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable. In the event of such a request, the Parties will meet and confer regarding the most reasonable means to provide the information requested.

## 7. DOCUMENTS PROTECTED FROM DISCOVERY

Each party will review documents for privileged information (or other information subject to a recognized immunity from discovery) prior to production. Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (*e.g., "Redacted for Privilege" or equivalent*). Documents withheld on privilege grounds will be identified in a privilege log in accordance with Fed. R. Civ. P. 26(b)(5). However, the parties agree that communications with both in-house counsel and outside counsel after the filing of the complaint in this matter are presumptively privileged, and need not be included on a privilege log, unless those communications are with or have been forwarded to a third party.

Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work product protected documents or data is not a waiver in the pending case or in any other federal or state proceeding, in any federal court-mandated arbitration proceeding, or in any foreign proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d). Further, performing keyword searches as a privilege screen prior to production of documents constitutes "reasonable steps to prevent disclosure" as that term is used in Federal Rule of Evidence 502(b).

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 12 of 18

This Order is not intended to govern any provisions which are separately addressed in a Protective Order. The mere production of documents or data in a litigation as part of a mass production shall not itself constitute a waiver for any purpose. Upon notice or discovery that privileged information has been produced, the Receiving Party shall:

(a) promptly destroy or return the privileged discovery material (and all paper and electronic copies) to the Producing Party. The Receiving Party shall delete the privileged discovery material from any systems used to house the documents, including document review databases, e-rooms, and any other location that stores the documents. To the extent that is not technologically feasible for a Receiving Party to destroy a clawed back document (for example, if the clawed back document is part of a production provided in a form such that it cannot be destroyed without destroying the entire production), the Parties will meet and confer promptly as to an acceptable alternative approach; or

(b) Notify the Producing Party or Non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered and will not use the material until the issue can be resolved. In such case, the Receiving Party must sequester and not use the material until the issue can be resolved, including any summaries, excerpts, or portions of such materials. The Parties agree to meet and confer regarding the claim of privilege within three (3) business days of the Producing Party's request to clawback documents. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 13 of 18

the Court. A Party challenging a clawback request under this section may use the content of the clawed-back document for the sole purpose of filing a motion with the Court.

**8. MODIFICATION**

This Stipulated Order may be modified upon motion to the Court for good cause shown.

**SO STIPULATED AND AGREED**

Dated: September 21, 2026

/s/ Brittany S. Scott

**SMITH KRIVOSHEY, PC**
Brittany S. Scott (*Pro Hac Vice*)
28 Geary Street, Suite 650 #1507
San Francisco, CA 94108
Telephone: (415) 839-7077
E-Mail: brittany@skclassactions.com

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (*Pro Hac Vice*)
*mmonroe@fmfpc.com*
TREVOR FLYNN (*Pro Hac Vice*)
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741

***Counsel for Plaintiffs***

Dated: September 21, 2026

/s/ Yuval Mor

**FENWICK & WEST LLP**
Tyler G. Newby (CA Bar No. 205790) (*Pro Hac Vice*)
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: (415) 875-2300
Facsimile: (415) 281-1350
Email: *tnewby@fenwick.com*

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 14 of 18

Justine A. Vandermel (NY Bar No. 6089031)
Email: *justine.vandermel@fenwick.com*
Yuval Mor (NY Bar No. 6159487)
Email: *amor@fenwick.com*
902 Broadway, 18th Floor
New York, NY 10010-6035
Telephone: (212) 430-2600
Facsimile: (650) 938-5200

***Attorney for Defendant Lume Deodorant, LLC***

**SO ORDERED.**

Dated: Sept 22, 2026

[signature]
Hon. Colleen McMahon
United States District Judge

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 15 of 18

## ATTACHMENT A

### List of Agreed Production Fields

| Field Name | Field Description |
|---|---|
| Production Bates Begin | Beginning bates number of the record. |
| Production Bates End | Last bates number of the record. |
| Production Bates Begin Attachment | Beginning bates number for the parent/child package. |
| Production Bates End Attachment | Ending bates number for the parent/child package. |
| Production Volume | The volume/batch identifier the document was produced in |
| Custodian | Name of person the document was collected from. |
| Parent ID | The Bates number of the parent document in a document family. Used to link child/attachment documents back to their parent record. |
| Attachment ID | The Bates number(s) of all child/attachment documents associated with the parent record. Used to link parent records to their attachments. |
| Conversation Index/Thread ID | A system-generated identifier used to group related email messages into a single conversation thread, enabling threaded review. For Microsoft Outlook emails, this is the native Conversation Index value; for other platforms, the equivalent thread identifier. |
| In Reply To / Message ID | RFC 822 message identifiers |

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 16 of 18

| | |
|---|---|
| All Custodians | Name(s) of All Custodians associated with the record including where documents have been removed as a duplicate. |
| Email From | Email sender. |
| Email To | Main recipient(s) of the e-mail message, by email address. |
| Email CC | Recipient(s) of "Carbon Copies of the e-mail message. |
| Email BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| Email Subject | Subject of the e-mail message. |
| Folder | The full directory path and folder structure of the original file, including drive letter or server path, folder hierarchy, and any container name. For email records, the mailbox folder path (e.g., Inbox, Sent Items) shall be included to the extent available. |
| Title | The extracted document title of a document. |
| Sent Date/Time | Date & Time the email was sent. Formatted as: mm/dd/yyyy hh:mm:ss |
| Received Date/Time | Date & Time the email was received. Formatted as: mm/dd/yyyy hh:mm:ss |
| Created Date/Time | Date & Time the record was created. Formatted as: mm/dd/yyyy hh:mm:ss |
| Last Modified Date/Time | Date & Time the record was last modified. Formatted as: mm/dd/yyyy hh:mm:ss |
| File Extension | File extension of native file. |

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 17 of 18

| | |
|---|---|
| File Name | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Text Path | Path and filename to extracted text OR OCR Text for imaged or redacted documents. |
| Native File Link | File path/folder structure of original used to link any produced native file in the load file. |
| MD5 Hash | MD5 Hash algorithm to uniquely identify file. |
| Number of Attachments | Number of attachments for the record. |
| File Type | The file type of a document (e.g., MS Excel Spreadsheet). |
| Author | Author field from metadata of a native file. |
| File Size | Size of the file in bytes. |
| Production Image Count | The number of pages for a document. |
| Record Type | The record type of a document. E-Mail Attachment, or E-Doc |
| Privileged | Field indicating the Privilege treatment of the document. |
| Confidentiality | Field indicating the Confidential treatment of the document. |
| Redacted | "Yes" should be populated if document contains redaction. (Yes/No format) |
| Redaction Basis | If a document contains a redaction, should be populated specifying the basis for the redaction, such as:<br>Attorney Client Privilege<br>Work Product<br>Personal Identifying Information |

Case 1:26-cv-05309-CM Document 30 Filed 09/21/26 Page 18 of 18

| | |
|---|---|
| Time Zone | Reference to reflect time zone data was processed in from default field. All date/time fields shall be processed and produced in Central Time (UTC), with the native time zone preserved in this field. Where a document's native time zone metadata is available, that information shall be reflected here. |
| SMS/MMS/iMessage | Phone number from/to, device, read receipts |
| Chat/IM | If Slack, Teams, Google Chat, or any similar messaging platform are used, the following fields should be populated: Channel/Room Name, Participants, Message ID, Edit History, Reactions, Thread Parent. |